PRYZBYLOWSKI *v.* BOARD OF COMMISSIONERS OF THE
POOR OF THE CITY OF DETROIT.

1. MUNICIPAL CORPORATIONS—CITIES—DETROIT CHARTER—PAUPERS
—BOARD OF POOR COMMISSIONERS—CIVIL SERVICE.

Under the various local and public acts constituting the
charter of the city of Detroit, it was provided that the
board might make disbursements from the county tempo-
rary relief fund, as formerly authorized by city aldermen
(Act No. 253, Local Acts 1883, sec. 5), and by said act
authority was withdrawn from the county superintendents
of the poor to administer relief in the city. It was also
provided that the board might expend State funds to
relieve persons who should become a public charge in a
place other than their home, but in no case was it em-
powered to administer relief outside the city; *held,* that
the duties of such board were local in character and that
it did not become a State agency in such sense as to ex-
clude the board from the operation of the civil-service
amendment to the charter of the city of Detroit, which
classifies the city physician as subject to civil service and
renders such official removable for cause only.

2. SAME—STATUTES—DETROIT CHARTER—AMENDMENTS.

The intention indicated by such amendment to the city
charter being to affect the local acts that gave the board
its authority, by a reasonable construction of the language
of the amendment, no ground for excepting them from
such operation could be gathered from the titles of the
special acts, because it was not thereby expressly declared
that they were amendments to the Detroit charter.

3. SAME—CHARTERS—CIVIL SERVICE—AMENDMENTS—REPEAL.

By charter provisions enacted by the people of the city,
adopting a new and comprehensive system of civil service
as to all offices, departments and commissions, special acts
and legislation in force relating to appointments and re-
movals were repealed or amended, though the later enact-
ment contained no express repealing clause.

Certiorari to Wayne; Murphy, J.  Submitted July 23, 1915.  (Calendar No. 26,851.)  Decided September 28, 1915.

Mandamus by Felix J. Pryzbylowski against the Board of Commissioners of the Poor of the city of Detroit and others, to require the respondent to reinstate relator as city physician and for other relief. From an order granting the writ, respondents bring certiorari.  Affirmed.

*Schmalzriedt, Spaulding & Toms,* for relator.

*James H. Lee,* for respondents.

STONE, J.  Certiorari to the circuit court for the county of Wayne.  As stated by counsel for respondents and appellants, the sole question here presented is whether or not the board of poor commissioners of the city of Detroit is, by reason of the functions it performs, a State agency, and therefore not subject to the civil-service amendment to the charter of the city of Detroit in the choice of and the discharge of its subordinates.

Relator was a city physician, who had been appointed to such position by the board of poor commissioners previous to the passage of the civil-service amendment of the charter of said city, and he was holding his said office at the time the said amendment was adopted. On July 1, 1914, the relator was discharged from said office of city physician by the said board, and his successor appointed, without complying with the rules and regulations of the civil-service amendment.  The board seeks to justify its action on the ground that it is a State agency, performing a function of the State, *i. e.,* the preservation of the health of the people of the State, and that it is therefore not subject to said civil-service amendment, any more than the Detroit board of health,

or the Detroit school board, or the recorder's court of the city, all of which have been determined to be State agencies, and not subject to said civil-service amendment.

On July 21, 1914, a petition for a writ of mandamus was filed by the relator in the said circuit court, praying that said board be compelled to reinstate him in the said office of city physician, and to place his name on the pay roll as such, and also directing the city controller and city treasurer to pay or cause to be paid to relator his salary as city physician from July 1, 1914, to the date of his reinstatement. An order to show cause was granted, respondents answered, a hearing was had, testimony taken, and upon the hearing an order was made and entered, allowing the prayer of said petition, and a peremptory writ of mandamus was issued to said respondents, directing that relator be reinstated, and his salary paid as prayed for. The case is here upon a writ of certiorari sued out by respondents.

The civil-service amendment to the charter of the city of Detroit provides that (with certain enumerated exceptions, none of which are involved in this case) :

"All officers, clerks and subordinates of all offices, departments and commissions of said city whether now existing or hereafter created, shall be selected and appointed as herein provided, but the officers, clerks and other employees in the service of said city, when this amendment shall take effect, unless removed for cause, shall be entitled to retain their positions, except as herein otherwise provided."

While the local acts creating the board of poor commissioners of the city, and the office of city physicians, and prescribing their duties, are not designated specifically, in their title or wording, as parts of or amendments to the city charter, this fact does not except them from amendment by the people, if the intention

to make such amendment appears by reasonable construction of the language of the charter amendment.

The charter as it stood prior to May 3, 1913, provided distinct and various methods of appointment and removal of officers, clerks, and subordinates in the several departments. By this amendment a new and comprehensive system of civil service was established, placing the appointment and discharge of employees of "all offices, departments and commissions" on a uniform footing, and placing all appointments and removals under the supervision of a civil service commission. Such amendment must necessarily repeal all, or supersede all special acts relating to appointments and removals in individual departments, even though it contains no express repealing clause. *Grobbel* v. *Board of Water Commissioners,* 181 Mich. 364 (149 N. W. 675).

As we understand the claim of respondents, it is that the board of poor commissioners is not a part of the city government, but a State agency, and that its duties are not local, but State-wide, in character, and that, consequently, it is subject to control by the legislature only, and not by the people of the city. This claim is based on the recent decision of this court in the case of *Civil Service Commission* v. *Engel,* 187 Mich. 83 (150 N. W. 1081), which followed the rule laid down in *Davock* v. *Moore,* 105 Mich. 120 (63 N. W. 424, 28 L. R. A. 783). In these cases the care of the public health was held to be a part of the police power which is inherent in the State, for the protection of the people of the State at large. In like manner the police force and criminal courts of local jurisdiction have been held to be State agencies for the preservation of public order and morals. *People* v. *Mahaney,* 13 Mich. 481; *People* v. *County Auditors,* 13 Mich. 233; *People* v. *Reilly,* 53 Mich. 260 (18 N. W. 849).

On the other hand, a large number of cases can be cited holding various activities of the city government to be of a local character, subject to local regulations, and wholly beyond the power of the State to regulate in any way which would interfere with the rights of local self-government. Among such cases are the following, relating to public works: *People* v. *Hurlbut,* 24 Mich. 44 (9 Am. Rep. 103) ; *Moreland* v. *Millen,* 126 Mich. 381 (85 N. W. 882). Relating to parks: *Board of Park Commissioners* v. *Common Council,* 28 Mich. 228 (15 Am. Rep. 202) ; *Attorney General* v. *Lothrop,* 24 Mich. 235; *Attorney General* v. *Bolger,* 128 Mich. 355 (87 N. W. 366). Relating to highways: *Davis* v. *Board of Supervisors,* 89 Mich. 295 (50 N. W. 862) ; *Hubbard* v. *Township Board of Springwells,* 25 Mich. 153; *Wayne Co. Road Commissioners* v. *Auditors,* 148 Mich. 255 (111 N. W. 901). Relating to waterworks: *Blades* v. *Board of Water Commissioners,* 122 Mich. 366 (81 N. W. 271). Relating to fire department: *Davidson* v. *Hine,* 151 Mich. 294 (115 N. W. 246, 15 L. R. A. [N. S.] 575, 123 Am. St. Rep. 267, 14 Am. & Eng. Ann. Cas. 352).

The department of waterworks and fire department, much like the board of poor commissioners, have to do with the furnishing of necessities or comforts of life for individuals located within the boundaries of the municipality. The system of poor relief is maintained for the benefit of the local community, and does not directly affect any person who is not, at least temporarily, an inhabitant of or found within the city. This is true, as well, of that part of the system which furnishes medicines and medical attention to those unable to pay for them, as of that part which furnishes fuel and clothing to those in the same condition. The fact that certain duties of the poor commission indirectly or casually affect the public health does not deprive the commission of its local character or trans-

fer it to State control.  We think that an examination of our statutes relating to the support of the poor will show that this has always been treated as a local function.

It is contended by the respondents that, although some of the duties of the board may be local, yet it is constituted a State board by reason of the fact that it expends State and county money for certain purposes. The expenditure of State money is authorized by section 8 of Act No. 72, Pub. Acts 1907, which regulates the granting of relief to persons who become a public charge in a place other than their home.  This act, as well as the prior legislation, is inconsistent with the theory that the support of the poor is a State duty.  The fact that the State in certain cases refunds the cost of support does not take from the board which furnishes it its local character.  In fact, the local character of the board is emphasized by its not being permitted to go outside its own territorial limit to furnish relief directly to its own citizens.

The board of poor commissioners is authorized to make disbursements from the county temporary relief fund by section 5 of Act No. 263, Local Acts 1883 (section 505, Compiled Charter), which reads as follows:

"The said board of poor commissioners shall perform the duties and make the disbursements out of the county temporary relief fund now authorized by the statutes of this State to be made by the aldermen of each ward in the city of Detroit, whose term of office will soonest expire, in the capacity of supervisors of their respective wards, and the said board is vested with all the power and duties of the aldermen as such supervisors relative to the support of the poor.  The county superintendents of the poor shall have no power to grant any temporary relief in the city of Detroit, but all such relief from the county temporary relief fund shall be granted by said board, and the said board

may draw its warrants on the county treasury therefor."

This section is in harmony with the general system of poor relief requiring aid to poor persons within the city to be given by city authorities, but not to be charged against city funds, when the persons aided are nonresidents. The duties of the board are strictly localized. The above section merely transfers an already existing duty from one agency to another, imposing upon the board of poor commissioners duties formerly belonging to the aldermen of the several wards in their capacity as supervisors of the county. It would hardly be argued that the performance of this duty by the aldermen made them State officers, or the agency a State agency.

The act relating to city physicians nowhere requires or authorizes those officers to work outside the city. Their duties are prescribed by section 3 of Act No. 343, Local Acts 1891 (section 516, Compiled Charter), as follows:

"Said physicians shall perform such duties and observe such rules and regulations in the care and treatment of the sick poor of the city of Detroit, as the board of poor commissioners of said city may direct and make, and shall perform such further duties and receive such compensation as the common council of said city may prescribe."

Even if the board be regarded as having a dual character, and as performing duties both for the city and State, the city physicians are limited by this section to that branch of the board work which lies within the city, and is within the scope of regulation by the common council and the local government. We think that the case of *Civil Service Commission* v. *Engel,* *supra,* is readily distinguished from the instant case.

In our opinion the city physicians are within the classified service of the city as defined by the civil-

service amendment, and cannot be removed from office, except for the causes and in the manner provided by that amendment.

The order of the circuit court is therefore affirmed.

Brooke, C. J., and Kuhn, Ostrander, Bird, Moore, and Steere, JJ., concurred.

The late Justice McAlvay took no part in this decision.