[No. 26958.    *En Banc.*    March 21, 1938.]

GREAT NORTHERN RAILWAY COMPANY *et al., Respondents,* v. FRANK J. GLOVER, *as Auditor of Spokane County, et al., Appellants.*[1]

[1]Reported in 77 P. (2d) 598.

Ralph E. Foley, A. O. Colburn, T. T. Grant, and Fred J. Cunningham, for appellants.

Ernest E. Sargeant, E. C. Matthias, Dean H. Eastman, R. S. Macfarlane, Hamblen, Gilbert & Brooks, and A. N. Whitlock, for respondents.

HOLCOMB, J.—This action was brought by several railroads to restrain the levying of taxes by townships in Spokane county for the construction, improvement, and maintenance of township roads, and to enjoin the spreading of the same upon the 1937 tax rolls by the assessor of Spokane county.

The complaint alleged that Spokane county is divided into fifty townships, with the township form of government, as provided in Title 80, Rem. Rev. Stat. (§§ 11360-11484 [P. C. §§ 7100-1 to 7100-119]); that respondents own, maintain, and pay taxes upon substantial real properties within certain townships in this county; that on July 30, 1937, by resolution, the board of county commissioners of Spokane county, for the purpose of administration of the county roads, formed Spokane county into three road districts outside of the incorporated cities and towns, in accordance with chapter 187,

Laws of 1937, p. 728; that thereafter the commissioners prepared and filed with the county auditor itemized statements of the expenditures required in each such road district in the following amounts: District No. 1, $18,700; district No. 2, $36,380; and district No. 3, $27,-500; that the county commissioners will, unless restrained, levy as road taxes the aforementioned amounts or as much thereof as can be produced by a levy of three mills upon all the taxable property within the three road districts; and that certain specified amounts in taxes have also been voted by the townships of this county for the year 1937 for road purposes, and the same have been certified to the county auditor for tax levy.

It was alleged the attempted levy by the townships will be illegal because: (1) These townships are not empowered to levy taxes for road purposes; (2) that these taxes will be in violation of chapters 187 and 207 of the Laws of 1937, pp. 728, 993; (3) that they are prohibited by chapter 1, Laws of 1937, p. 3, Rem. Rev. Stat. (Sup.), § 11238-1b, commonly designated as the forty mill limit law; and (4) that they will violate the fourteenth amendment of the United States constitution and Art. I, § 3, of the constitution of this state. Therefore, plaintiffs prayed that a temporary restraining order issue, restraining defendants from levying these assessments and from spreading them upon the tax rolls until notice and hearing be had thereon.

Appellants moved to dismiss this complaint, interposed a demurrer thereto and to the motion for a temporary restraining order, on the ground that the facts stated do not constitute a cause of action.

Opportunity Township, a municipal corporation existing under the state laws relating to township organizations, filed a petition in intervention as a party defendant, alleging that there are forty-nine other cor-

porate townships in Spokane county; that the question involved is one of common interest to all of the townships and the inhabitants thereof; and that this petition was presented on its own behalf and on behalf of all other townships similarly situated in that county. An order was entered granting this petition in intervention.

Thereupon, the intervener demurred to the complaint and the motion for a temporary restraining order. The demurrers of appellants and intervener were overruled.

Appellants and intervener having elected to stand upon their demurrers and not to plead further, the trial court held the townships in Spokane county have no authority to levy taxes for road purposes; that the taxes voted by the townships in 1937 for this purpose are illegal; and the assessor of Spokane county was enjoined from spreading such road taxes upon the assessment books or tax rolls against respondents' properties. From this judgment, appellants and intervener appeal.

The assignments of error really present only two questions, namely, whether chapters 187 and 207 of the Laws of 1937, pp. 728, 993, impliedly repeal portions of the township law, and whether organized townships are clothed with authority to levy taxes for township road purposes as voted in 1937.

The township form of organization of local government was employed at an early date in the American colonies. Independent of incorporated cities or municipal corporations proper as a unit of administration, three different types of local government now exist. First, the New England system, in which the county as a local governmental organ is largely subordinate; second, the southern system, in which the county, sometimes designated a parish, is the unit of administration; and third, a compromise system, that is, a combination of township and county. The latter exists in Spokane

county. 1 McQuillin, Municipal Corporations (2d ed.), 236, § 85.

A township has been defined as follows:

"In this country a township is a territorial district, subordinate to a county into which counties in many of the states are divided, the inhabitants of which are invested with political and administrative powers for regulating their own minor local affairs, such as repairing roads, maintaining schools and providing for the poor." 1 McQuillin, Municipal Corporations (2d ed.), 237, § 86.

Article XI, § 4, of our state constitution, which prescribes the legislature shall provide for township organizations by general laws, reads:

"The legislature shall establish a system of county government, which shall be uniform throughout the state, and by general laws shall provide for township organization, under which any county may organize whenever a majority of the qualified electors of such county voting at a general election shall so determine; and whenever a county shall adopt township organization the assessment and collection of the revenue shall be made, and the business of such county and the local affairs of the several townships therein, shall be managed and transacted in the manner prescribed by such general law."

Pursuant to this constitutional mandate, the legislature passed an act providing for township organization, chapter 175, Laws of 1895, p. 472, Rem. Rev. Stat., §§ 11360 to 11484. While the original act has been amended in several particulars, these amendments, except as hereinafter referred to, are not germane to the issues presented.

In order to clarify the issues before us, it is advisable to inquire into the organization, officers, powers, and functions of townships under the township act.

Chapter 74, Laws of 1927, p. 56, § 1, Rem. Rev. Stat., § 11363 [P. C. § 7100-4], provides that, in the event the

majority of the votes cast at a general election are in favor of township organization, it is the duty of the board of county commissioners to divide all the surveyed portion of the county, outside of incorporated cities, towns and villages, into organized townships.

Under chapter 47, Laws of 1909, p. 74, § 1, Rem. Rev. Stat., § 11370 [P. C. § 7100-11], each town is vested with certain powers, namely, to sue and be sued, to purchase or receive by gift, and hold lands within its own limits for the use of its inhabitants, to make contracts, purchase, hold and convey such personal property as may be necessary for the exercise of its corporate or administrative powers, and to make such orders for the disposition, regulation, or use of its corporate property as may be deemed conducive to the interest of its own inhabitants.

Chapter 13, Laws of 1923, p. 15, § 3, Rem. Rev. Stat., § 11376 [P. C. § 7100-17], provides for the election of a board of supervisors composed of three members for the administration of township affairs.

Chapter 269, Laws of 1927, p. 620, § 1, Rem. Rev. Stat., § 11378 [P. C. § 7100-18], contains twelve subdivisions in which are set forth the powers of the electors of a township. They include control over pounds, fences, domestic animals at large, cemeteries, peddling, auctioneers, amusements, the formulation and promulgation of such regulations as may be deemed conducive to the peace, good order, and welfare of the township, and voting for the levying of a tax for the purpose of creating a river improvement fund.

Subdivision 9 of the last above mentioned section provides in part:

"To vote to raise such sums of money for the repairs and construction of roads and bridges as they deem necessary, and to determine the amount thereof to be assessed by the supervisors as labor tax and the amount thereof to be assessed and collected as other town taxes.

Also to vote such sums of money for other necessary town charges as they deem expedient: Provided, that they may, at their annual town meeting, direct such an amount of the poll and road tax of the town to be expended on highways in an adjoining town as they deem conducive to the interests of the town, which labor and tax shall be expended under the direction of the supervisors of the town furnishing same: And provided, that they shall not have power ·to raise money for the construction, maintenance or repair of bridges, the cost of construction whereof was or will be in excess of three hundred dollars ($300), but such bridges shall be under the sole jurisdiction and control of the county."

Chapter 175, Laws of 1895, p. 487, § 50, Rem. Rev. Stat., § 11409 [P. C. § 7100-49], provides for the preservation of public health and the suppression of nuisances by the township supervisors.

Chapter 108, Laws of 1919, p. 263, § 2, Rem. Rev. Stat., § 11407 [P. C. § 7100-47], prescribes, *inter alia*, that the supervisors of the township shall have power over all highways and bridges in their respective townships and the care and supervision thereof, to establish new highways and bridges, and to vacate or alter highways and bridges located within the township. However, this act further provided that this statute did not prohibit any county from building, repairing, altering, and maintaining at the expense of the county such highways and bridges as the county is interested in or such as may be of so large cost that a single township could not undertake the construction thereof, or such as are located in sparsely settled townships which are unable to construct the same.

Chapter 13, Laws of 1923, p. 19, § 8, Rem. Rev. Stat., § 11445 [P. C. § 7100-83], commands that all taxes shall be levied or voted in specific amounts, and limitations on the rate of taxation are also set forth.

Chapter 175, Laws of 1895, p. 507, § 116, Rem. Rev. Stat., § 11479 [P. C. § 7100-117], provides when town-

ships are fully organized under the township act, the road districts theretofore organized by the county commissioners shall be abolished, and road districts shall be established as provided in the township law.

From the foregoing statutes, it is clear that townships have heretofore been vested with authority to perform a number of functions, among which is the levying of taxes for the maintenance, improvement, and construction of roads situated within the geographical limits of the township.

We consider now the effect of the enactments of the 1937 session of the legislature upon the powers heretofore vested in townships relative to township roads.

Chapter 207, Laws of 1937, p. 993, § 1, Rem. Rev. Stat., Vol. 7A, § 6402-1, classifies all public highways in the state as follows:

*"All public highways in the State of Washington, or portions thereof, outside incorporated cities and towns shall be divided and classified as primary state highways, secondary state highways, and county roads.* All primary state highways shall be established by the legislature of the State of Washington and shall be described, and designated by convenient number and descriptive name. All secondary state highways shall be established by the legislature of the State of Washington as branches of primary state highways and shall be described and designated by convenient number. *All public highways in the State of Washington, or portions thereof, outside incorporated cities and towns, not established as primary state highways or secondary state highways, are hereby declared to be county roads."* (Italics ours.)

Chapter 187, Laws of 1937, p. 728, Rem. Rev. Stat., Vol. 7A, § 6450-1 *et seq.*, is a comprehensive law relating to the administration of county roads, and § 6450-1 (g) provides:

" 'County Road.' Every public highway as herein defined, or part thereof, outside the limits of incorporated

cities and towns and which has not been designated as a primary state highway."

Chapter 53, Laws of 1937, p. 137, § 1, Rem. Rev. Stat., Vol. 7A, § 6400-1, recognizes the same classification of roads embodied in chapters 207 and 187, *supra*.

Chapter 187, Laws of 1937, p. 733, § 2, Rem. Rev. Stat., Vol. 7A, § 6450-2, prescribes:

"All of the county roads in each of the several counties shall be established, laid out, constructed, altered, repaired, improved and maintained by the board of county commissioners of the respective counties as agents of the State of Washington and subject to the directions and approval of the director of highways to the extent provided in this act."

Chapter 187, Laws of 1937, p. 734, § 4, Rem. Rev. Stat., Vol. 7A, § 6450-4, provides for the employment by the board of county commissioners of a county road engineer who is charged with establishing, laying out, constructing, altering, repairing, improving, and maintaining all county roads in a given county.

Chapter 187, Laws of 1937, p. 735, § 5, Rem. Rev. Stat., Vol. 7A, § 6450-5, provides that, for the purpose of administration of county roads of each county, a board of county commissioners may form road districts.

Chapter 187, Laws of 1937, p. 736, § 6, Rem. Rev. Stat., Vol. 7A, § 6450-6, provides in part:

"There is hereby created in each county of the state a county fund to be known as the 'county road fund.' From and after the taking effect of this act, the secondary highway fund, general road and bridge fund, road district funds and any and all other funds existing in any county, in which funds for use upon roads herein classified as county roads are deposited, are hereby abolished. Any funds in the secondary highway fund, general road and bridge fund, road district fund or any other fund in which funds are deposited in any county for use upon roads herein classified as county roads, shall be and the same are hereby transferred to and

deposited in the county road fund of such county.
. . ."

Chapter 187, Laws of 1937, p. 737, § 7, Rem. Rev. Stat.,
Vol. 7A, § 6450-7, reads:

"For the purpose of raising revenue for the establish-
ing, laying-out, constructing, altering, repairing, im-
proving, and maintaining of the county roads, bridges,
and wharves necessary for vehicle ferriage and for
other proper county road purposes, the board of county
commissioners shall annually at the time of making the
levy for general purposes make a uniform tax levy
throughout the county, or any road district thereof, of
not to exceed ten mills on the dollar on all taxable prop-
erty in such county, or road district thereof, unless
other law of the state provides a lower maximum levy
allowable, in which event such lower maximum levy
shall control. All funds accruing from such levy shall
be credited to and deposited in the county road fund to
be expended therefrom as in this act provided."

Chapters 53, 187 and 207, Laws of 1937, are
*in pari materia,* announce the same classification, reflect
a legislative intent to integrate our entire highway
system throughout the state, and to legislate completely
with respect to all roads and highways located within
the state. 2 Lewis' Sutherland, Statutory Construction
(2d ed.), 844, *et seq.,* § 443. The above acts recognize
only primary and secondary state highways and county
roads.

Appellants contend the powers of the township
over township roads remain unimpaired, notwithstand-
ing the above referred to acts passed at the last session
of the legislature, because repeals by implication are
not favored. Appellants also urge that the rule of im-
plied repeal is not applicable because chapter 47, Laws
of 1909, p. 80, § 12, Rem. Rev. Stat., § 11484, a part of the
township act, prescribes:

"No act that shall hereafter become a law shall be
construed as in any manner altering, amending or re-

pealing any of the provisions of this title *unless such act expressly so provides.*" (Italics ours.)

Conceding the soundness of the rule of statutory construction which appellants rely upon, still, if two statutes relating to the same subject matter are incompatible, the later act operates as a repeal of the earlier act to the extent that its provisions are revised, especially when the later act covers the entire subject. *Paine v. State,* 156 Wash. 31, 286 Pac. 89; *State ex rel. West Side Imp. Club v. Department of Public Service,* 186 Wash. 378, 58 P. (2d) 350; *State ex rel. Spokane & Eastern Branch etc. v. Justice Court,* 189 Wash. 87, 63 P. (2d) 937; *State ex rel. Johnston v. Gregory,* 191 Wash. 691, 72 P. (2d) 308. Moreover, chapter 187, Laws of 1937, p. 780, § 72, Rem. Rev. Stat., Vol. 7A, § 6450-72, provides all acts or parts of acts in conflict with, or derogation of, this act are repealed.

In *Gunther v. Huneke,* 58 Wash. 494, 108 Pac. 1078, the question was presented whether townships are controlled in their sale of intoxicating liquors by the township law or by the local option law. This court held the local option law was a general and later law and applicable to all the counties of the state, and since the two laws in question were inconsistent, the later act must prevail over the township law. This court said:

"It is said that the term 'such general law,' as used in the section first quoted, refers only to laws relating to township organization, which is no doubt true; but these words do not mean that general laws, applicable to the whole state without specifically excepting such townships, are not as controlling therein as the same are in counties or cities of other classes. These constitutional provisions do not in any manner take away from the legislature the control of such townships in all of the affairs thereof by general law."

Appellants direct our attention to the fact that acts and parts of acts are expressly repealed by §§ 100 to

102, inclusive, chapter 53, *supra,* and by §§ 68 to 71, inclusive, in chapter 187, *supra,* and then cite authorities to the effect that, where a statute expressly repeals specific acts, there is a presumption that it was not intended to repeal others not specified.

Notwithstanding these specific repealing sections and the absence of a specific reference to the township act, we are persuaded that this presumption has been overcome because of the clear inconsistency between the township law and the new legislation relating to highways generally.

Since the power to construct and to maintain public highways within the townships was conferred by general law, the legislature may modify or repeal at any time the statutes conferring this power upon the township, and one session of the legislature may not bind a subsequent session in regard to the mode of effecting a repeal of an existing law, as was attempted by Rem. Rev. Stat., § 11484. *Gunther v. Huneke, supra.*

█ It is urged that chapters 187 and 207, Laws of 1937, fall within the ban of Art. II, § 19, of the state constitution, prescribing, "No bill shall embrace more than one subject, and that shall be expressed in the title," and Art. II, § 37, which reads:

"No act shall ever be revised or amended by mere reference to its title, but the act revised or the section amended shall be set forth at full length."

These contentions are without merit. *State ex rel. Scofield v. Easterday,* 182 Wash. 209, 46 P. (2d) 1052; *State v. Hanlen,* 193 Wash. 494, 76 P. (2d) 316.

█ Appellants contend the new highway legislation marks a serious invasion of the right of local autonomy and home rule if it curtails the powers of the townships relative to the construction and maintenance of township roads and the levying of taxes therefor. It is pointed out that heretofore there have existed side by

side, outside of the incorporated cities and towns, at all times since the township form of organization was adopted in Spokane county, three governmental jurisdictions over highways in the county, namely, township, county, and state, and that these governmental agencies have made possible an efficient system of highways.

By virtue of Art. XI, § 11, of the state constitution, townships are authorized to make and enforce within their limits all such local, police, sanitary, and other regulations not in conflict with the general laws.

Townships usually may act only through powers expressly conferred upon them by the legislature. *Georges Tp. v. Union Trust Co. of Uniontown,* 293 Pa. 364, 143 Atl. 10; *Jewish Consumptives' Relief Soc. v. Town of Woodbury,* 230 App. Div. 228, 243 N. Y. Supp. 686; McQuillin, Municipal Corporations (2d ed.), 1937 Cum. Sup., 10, § 86. In *Love v. King County,* 181 Wash. 462, 44 P. (2d) 175, we stated:

"State government has the inherent power to tax, and since taxation is a legislative process, the power to tax necessarily falls within the legislative branch of government, and in that branch rests absolute discretion, subject only to constitutional and inherent limitations. Under such limitations, the legislative branch has the power to determine the amount or the rate of a tax, and also the power to limit the amount or rate of taxation by a county, town, municipality or other local subdivision. 1 Cooley on Taxation (4th Ed.), § 69; pp. 171-176; § 162, pp. 358-360; § 165, pp. 361-363; 15 C. J. 632.

"It is a legal tenet, universally accepted, that the power of a county or other municipal corporation to tax is not an inherent, but a delegated, power. 1 Cooley on Taxation (4th Ed.), §§ 119, 122, pp. 264, 276. It can exist only by grant from the sovereign state."

Art. II, § 10, of the state constitution provides the legislature, by general laws, shall provide for the incorporation, organization, and classification of cities and

towns; that these laws may be altered, amended, or repealed.

Admittedly, the powers conferred upon townships to levy taxes for township roads were allocated through the medium of general laws enacted pursuant to constitutional authorization and existed only by virtue of the statutes referred to. We find no constitutional inhibition against the withdrawal by the legislature of the powers granted to townships over their roads, the same as has been done with towns and cities. (See *White v. North Yakima*, 87 Wash. 191, 151 Pac. 645.)

We are not concerned with the wisdom of this legislation, but only with the power of the legislature to enact it and the legislative intent expressed therein.

In *Meehan v. Shields*, 57 Wash. 617, 107 Pac. 835, it was contended the state aid road law was violative of the constitutional provision providing for local self-government. We said:

"Our constitution is a limitation of power, and such rights and powers of local government as are not conferred upon counties by the language of the constitution remain with the state and may be exercised by the legislature as the law-making power of the state. Rules and regulations for local county government and control, except as otherwise provided for in the constitution, are as much within the control of the state as those matters which are more general and statewide. The citizens of the state require roads to pass from one portion of the state to another, such requirement being a general, beneficial use. It is the duty of the state to construct and maintain such roads, and if, as it needs must, such road passes through a county, the fact that the state exercises supervision of its improvement is not in violation of any provision of local self-government contained in our constitution. Neither is it destructive of the provision for uniformity of taxation."

A county or municipal corporation may not levy a tax in the absence of a specific grant of power by the sovereign.

We conclude that the provisions of the township laws have been impliedly repealed in so far as they are inconsistent with chapters 53, 187, and 207 of the Laws of 1937.

Township roads no longer exist in this state, and all highways which are not state highways are county roads. Therefore, the power of townships to levy taxes for roads located within the geographical area covered by the townships has been withdrawn, and hence the attempted levy by the townships for road purposes must be enjoined.

Under the disposition we have made of this case, it becomes unnecessary to determine whether the attempted levy contravenes the forty mill tax law.

The judgment of the trial court is affirmed.

ALL CONCUR.

